**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| DANIEL KENNEDY, *et al.*, ) | |
| ) | No. 2:12-mn-1-DCN |
| Plaintiffs, ) | No. 2:12-cv-2305-DCN |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| MI WINDOWS AND DOORS, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

   This matter is before the court on a motion to dismiss the second amended complaint brought by defendant MI Windows and Doors, Inc. (MIWD).  For the reasons stated below, the court dismisses the amended complaint without prejudice and grants the motion to strike.

   This order marks the third time that the court has dismissed plaintiff Daniel Kennedy's complaint without prejudice, and the second time that the court has done so upon MIWD's motion.  Many of the second amended complaint's claims are dismissed for precisely the same reasons that they were dismissed before.  This is not a surprising result, as many of the pleadings in the second amended complaint are unchanged from the first amended complaint.

   The court now dismisses the flawed second amended complaint without prejudice in order to allow plaintiff to re-file another amended complaint directly with this court rather than require him to file a new lawsuit in Illinois federal court.  However, the court does not intend to be the final editor of Kennedy's pleadings, reviewing and re-reviewing amended complaints until, finally, one survives the court's scrutiny.  The court urges Kennedy – and plaintiffs in the other cases in this multidistrict litigation – to take this

1

opportunity to truly amend the pleadings, and not simply regurgitate the same allegations for the court's review.[1]

## I. BACKGROUND

On March 9, 2012, Kennedy filed a class action complaint against MIWD in the United States District Court for the Northern District of Illinois, alleging jurisdiction based on diversity of citizenship. At the hearing held before this court on September 19, 2012, the parties agreed that the complaint should be dismissed and that Kennedy should be permitted to amend his complaint. The court granted Kennedy's motion for leave to amend, and Kennedy amended his complaint on October 3, 2012. MIWD moved to dismiss the amended complaint on October 18, 2012. After the matter was fully briefed, and after the court had the benefit of the parties' oral argument, the court dismissed the amended complaint without prejudice on January 24, 2013. The court's order granted Kennedy "leave to re-file an amended complaint within 20 days" of the date the order was issued. Order, Jan. 24, 2013, ECF No. 50.

Kennedy filed a second amended complaint on February 13, 2013. The second amended complaint brings the following four claims: (1) breach of express warranty; (2) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("the ICFA"); (3) negligence/negligent design; and (4) declaratory relief. Through his second amended complaint, Kennedy also seeks to add Charles Bradley as a named plaintiff in this case.

---

[1] To give the plaintiffs fair warning, the court will quote what Roberto Durán, also known as "Manos de Piedra," said to Sugar Ray Leonard on November 25, 1980: "No más."

On February 27, 2013, MIWD moved to strike Bradley from the second amended complaint and moved to dismiss the second amended complaint in its entirety. The matter has been fully briefed and is ripe for the court's review.

## II.  STANDARDS

### A.  Motion to Strike

Under Federal Rule of Civil Procedure 12(f), the court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "The court may either strike on its own or on a motion by a party and has considerable discretion in striking any redundant, immaterial, impertinent or scandalous matter." Delta Consulting Grp., Inc. v. R. Randle Constr. Co., 554 F.3d 1133, 1141 (7th Cir. 2009).

### B.  Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss for "failure to state a claim upon which relief can be granted."  When considering a Rule 12(b)(6) motion to dismiss, the court must accept the plaintiff's factual allegations as true and draw all reasonable inferences in the plaintiff's favor. Meriwether v. Faulkner, 821 F.2d 408, 410 (7th Cir. 1987).  But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

On a motion to dismiss, the court's task is limited to determining whether the complaint states a "plausible claim for relief." Id. at 679.  A complaint must contain sufficient factual allegations in addition to legal conclusions.  Although Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled

3

to relief," "a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). The Seventh Circuit requires that a plaintiff "provide some specific facts to support the legal claims asserted in the complaint." McCauley v. City of Chicago, 671 F.3d 611, 616 (7th Cir. 2011). "The degree of specificity required is not easily quantified, but the plaintiff must give enough details about the subject-matter of the case to present a story that holds together." Id. (relying on Swanson v. Citibank, N.A., 614 F.3d 400, 404 (7th Cir. 2010)).

### C. Applicable Law

This case is predicated on diversity jurisdiction and was filed in federal court, so it is governed by state substantive law and federal procedural law. Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 130 S. Ct. 1431, 1448 (2010) (citing Hanna v. Plumer, 380 U.S. 460, 465 (1965)). For diversity cases that are transferred in an MDL, "the law of the transferor district follows the case to the transferee district." Manual for Complex Litigation (Fourth) § 20.132 (2004). Therefore, this court must apply Illinois substantive law and federal procedural law.

### III. DISCUSSION

MIWD seeks to dismiss all counts of Kennedy's complaint, and to strike Bradley from the complaint.

### A. Pleadings Relating to Proposed Plaintiff Charles Bradley

MIWD argues that "the Court should strike the newly added plaintiff, Bradley, from the Second Amended Complaint because neither Kennedy nor Bradley had this Court's permission to add a new plaintiff." Def.'s Mem. in Supp. of Mot. to Dismiss 3.

4

Kennedy responds that it was appropriate for Bradley to be added to the second amended complaint because the court had granted Kennedy leave to amend his complaint and because MIWD has not yet filed an answer in this case. Pls.' Resp. in Opp'n to Mot. to Dismiss 5.

A number of courts have held that a plaintiff wishing to add other parties to a case may do so by amending his or her complaint pursuant to Rule 15. See, e.g., Johnson v. Allstate Ins. Co., No. 07-cv-0781, 2010 WL 1325272, at *2 (S.D. Ill. Mar. 29, 2010) (noting that it is "particularly appropriate" to add new plaintiffs to a multidistrict litigation case through a Rule 15 motion to amend because the new plaintiffs are represented by the same counsel as existing plaintiffs and are not adverse to any existing plaintiffs); Joshlin v. Gannett River States Publ'g Corp., 152 F.R.D. 577, 579 (E.D. Ark. 1993) (finding that addition of new plaintiffs is appropriate where the "legal and factual issues [are] identical to the issues raised in the original complaint"); see also 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1474 (3d ed. 1998) ("[A] party may make a Rule 15(a) amendment to add, substitute, or drop parties to the action.").

Though Bradley is represented by the same counsel as Kennedy, the court nevertheless finds that it would be improper to allow Bradley to be added as a plaintiff through the second amended complaint. It is not clear from the second amended whether Bradley is an original or subsequent owner of his home. As a result, the court cannot determine whether Bradley's interests are sufficiently represented by Kennedy or whether the legal and factual issues relating to Bradley are identical to those raised in Kennedy's first amended complaint. The court will not read in allegations that are not there.

All references to Charles Bradley must be stricken from the second amended complaint as impertinent material because Bradley has not been properly added as a plaintiff.[2]  The remainder of the court's analysis refers only to Kennedy.

### B.  Count I – Breach of Express Warranty

MIWD argues that Kennedy's breach of express warranty claim must fail because it does not allege that Kennedy is in privity with MIWD, or that MIWD's warranty formed the basis of the bargain in which Kennedy purchased his home.

In Illinois,

> To state a claim for breach of express warranty, plaintiffs must allege that (1) the seller made an affirmation of fact or promise; (2) relating to the goods; (3) which was part of the basis for the bargain; and (4) seller guaranteed that the goods would conform to the affirmation or promise.

Indus. Hard Chrome, Ltd. v. Hetran, Inc., 64 F. Supp. 2d 741, 747 (N.D. Ill. 1999); see also Int'l Bhd. of Teamsters Local 734 Health & Welfare Trust Fund v. Phillip Morris, Inc., 34 F.Supp.2d 656, 664 (N.D. Ill. 1998) (citing L.S. Heath & Son v. AT&T Info. Sys., 9 F.3d 561, 570 (7th Cir. 1993)).  To satisfy these elements, it is sufficient for plaintiffs to attach the express warranty to the complaint.  Hetran, 64 F. Supp. 2d at 747 (citing Bd. of Educ. v. A, C, & S, Inc., 548 N.E.2d 580 (Ill. 1989)).

Kennedy has not attached an express warranty to the second amended complaint, and the complaint's allegations amount only to a mere recitation of the elements of a breach of express warranty claim.  For example, the complaint alleges that "[MIWD's]

---

[2] This court recently reached the opposite result in Deem v. MI Windows & Doors, Inc., Docket No. 12-cv-02269-DCN.  In Deem, however, the amended complaint expressly alleged that the newly added plaintiffs were initial owners of their home, while the original plaintiff was not.  In its order granting in part plaintiffs' motion to amend, the court explained that "as original owners of their home, the McCubbreys' interests may not be sufficiently represented by Deem, who is a subsequent owner of his home."  Order, June 24, 2013, ECF No. 58.  Here, the second amended complaint does not allege that Bradley is the original owner of his home.

representations, described herein, became part of the basis of the bargain when Plaintiffs, Plaintiffs' builders, Class Members, or Class Members' builders purchased the Windows and/or purchased the homes containing the Windows," and that "the Windows did not conform to the express representations contained within the Windows [sic]." 2d Am. Compl. ¶¶ 69, 71. These allegations simply do not "provide . . . specific facts to support the legal claims asserted in the complaint," and do not "give enough details about the subject-matter of the case to present a story that holds together." McCauley, 671 F.3d at 616. Moreover, as Kennedy has not alleged that he is the initial owner of his home, the second amended complaint fails to demonstrate how MIWD's express warranty could apply to him. See 2d Am. Compl. ¶ 67 ("MIWD expressly represented that its warranties extended to the initial homeowner whose home contains the windows.") (emphasis added).

As a result, Count I, the breach of express warranty claim, will be dismissed without prejudice.

### C. Count II – Violation of the ICFA

The ICFA allegations included in the second amended complaint are, in substance, unchanged from the insufficient allegations included in the first amended complaint. As a result, Kennedy's ICFA claim fails for the same reasons that doomed that claim in his first amended complaint.

To state a claim under the ICFA, a plaintiff must allege:

> (1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce. In addition, a plaintiff must demonstrate that the defendant's conduct is the proximate cause of the injury.

7

Wigod v. Wells Fargo Bank, N.A., 673 F.3d 547, 574 (7th Cir. 2012) (internal quotations omitted).  Kennedy argues that his ICFA claim sounds in unfairness rather than fraud, and so the less-stringent Rule 8 pleading standard applies.

However, as the court stated in its order dismissing the first amended complaint, Kennedy's ICFA allegations fail to meet the pleading standards required by either Rule 8 or Rule 9(b).  Because the allegations still lack the detail required by Iqbal and Twombly, the court need not accept them as true.

For these reasons, Count II of the amended complaint will be dismissed without prejudice.

### D.  Count III – Negligence/Negligent Design

MIWD argues that Kennedy's negligence claim is barred by the economic loss doctrine.  Kennedy responds that he has properly pleaded damage to other property, including other personal property, which is not covered by the economic loss rule.

The Illinois Supreme Court has held that plaintiffs may not recover in tort for purely economic losses.  Moorman Mfg. Co. v. Nat'l Tank. Co., 435 N.E.2d 443, 448 (Ill. 1982).  "Economic losses" include:

> [D]amages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits – without any claim of personal injury or damage to other property[,] as well as the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold.

Id. at 449.  Plaintiffs may recover in tort for damage to "other property," but this exception to the economic loss rule does not apply "when a defective product causes the type of damage one would reasonably expect as a direct consequence of the failure of the defective product."  Trans States Airlines v. Pratt & Whitney Canada, Inc., 682 N.E.2d 45, 58 (Ill. 1997) (barring recovery for damage to an aircraft's frame caused by a

8

defective engine when the aircraft frame and engine were purchased together, as an airplane); see also Mars, Inc. v. Heritage Builders of Effingham, Inc., 763 N.E.2d 428, 438 (Ill. App. Ct. 2002) (barring recovery for the collapse of a warehouse frame during construction when the parties bargained for the construction of an entire warehouse). Moreover, "a claim or personal injury or damage to other property must arise from a 'sudden, dangerous, or calamitous occurrence'" in order for that claim to be considered something other than economic loss. Nabisco, Inc. v. Am. United Logistics, Inc., Docket No. 99-cv-00763, 2000 WL 748131, at *3 (N.D. Ill. June 1, 2000) (quoting In re Chicago Flood Litig., 680 N.E.2d 265, 275-76 (Ill. 1997)), aff'd, Am. Logistics, Inc. v. Catellus Dev. Corp., 319 F.3d 921, 928 (7th Cir. 2003); see also Trans State Airlines, 682 N.E.2d at 54. "The factors to be analyzed in distinguishing between economic loss and property damage include: the nature of the defect, the type of risk, and the manner in which the injury arose." Nabisco, 2000 WL 748131, at *3 (citing Trans State Airlines, 682 N.E.2d at 51; Moorman, 435 N.E.2d at 450).

      Illinois courts have held that the following are not sudden, dangerous, or calamitous occurrences: (1) the gradual intrusion of water into the walls of condominiums and the gradual growth of mold due to that leakage, 1324 W. Pratt Condo. Ass'n v. Platt Constr. Grp., Inc., 936 N.E.2d 1093, 1100 (Ill. App. Ct. 2010); (2) the gradual contamination of soil by deterioration of petroleum, NBD Bank v. Krueger Ringier, Inc., 686 N.E.2d 704, 708 (Ill. App. Ct. 1997); (3) the contamination of flour with sand, Dixie-Portland Flour Mills, Inc. v. Nation Enterps., Inc., 613 F. Supp. 985, 989 (N.D. Ill. 1985); and (4) the gradual contamination of food products by airborne chemicals, Nabisco, 2000 WL 748131, at *6. In all of these cases, Illinois courts found

that the economic loss doctrine mandated dismissal of the plaintiffs' tort claims because the injuries suffered by "other property" did not arise from sudden, dangerous, or calamitous occurrences.  Cf. United Air Lines, Inc. v. CEI Indus., Inc., 499 N.E.2d 558, 562-63 (Ill. App. Ct. 1986) (plaintiff's claims not barred by the economic loss doctrine because damages were caused by the sudden collapse of an office ceiling, not by the gradual roof leak that preceded the ceiling collapse).

The damages alleged by the second amended complaint are remarkably similar to the damages alleged in Platt Construction.  As in Platt Construction, Kennedy alleges that gradual water intrusion has damaged his home, damaged property within his home, and caused microbial contamination that threatens his personal health.  2d Am. Compl. ¶ 101, 103; Platt Constr. Grp., 936 N.E.2d at 1096.  In both cases, the defects described have allegedly caused damage "over the long-term."  2d Am. Compl. ¶ 6; Platt Constr. Grp., 936 N.E.2d at 1100.  And, as in Platt Construction, the allegations of the second amended complaint do not identify a sudden, dangerous, or calamitous occurrence that damaged Kennedy's home.[3]

Because Kennedy has failed to allege anything other than economic loss, the court will dismiss Count III, plaintiffs' negligence claim, without prejudice.[4]

---

[3] As noted in the court's previous order, Kennedy's reliance on Bd. of Educ. v. A, C, & S, Inc., 548 N.E.2d 580 (Ill. 1989) is misplaced.  A, C, & S is distinguishable from the instant case.  A, C, & S involved the mandatory removal of asbestos from public school buildings, as required by Illinois state law.  Id. at 584.  While reasserting the validity of the economic loss doctrine, the Illinois Supreme Court concluded that "it would be incongruous to argue there is no damage to other property when a harmful element exists throughout a building or an area of a building *which by law must be corrected* and at trial may be proven to exist at unacceptably dangerous levels."  Id. at 588 (emphasis added).  Unlike the plaintiffs in A, C, & S, Kennedy is not required by law to remove the mold or microbial growth from his home.

[4] This case differs from other cases this MDL in which the court has found that an allegation of damage to "other personal property" was enough to survive MIWD's motion to dismiss.  Illinois courts have determined that the economic loss doctrine bars recovery even for a plaintiff's

10

### E. Count IV – Declaratory Relief

Finally, MIWD argues that plaintiffs' separately styled claim for declaratory relief should be dismissed because it is inappropriate at this time. As it did in its previous order, the court agrees with MIWD.

Declaratory relief is inappropriate at this stage, as the merits of plaintiffs' substantive claims have not been adjudicated. See, e.g., F.D.I.C. v. OneBeacon Midwest Ins. Co., 883 F. Supp. 2d 754, 761-62 (N.D. Ill. 2012) (dismissing a declaratory relief claim that raised the same issue as a substantive legal claim already before the court); Vill. of Sugar Grove v. F.D.I.C., Docket No. 10-cv-03562, 2011 WL 3876935, at *9 (N.D. Ill. Sept. 1, 2011) ("We have discretion to decline to hear a declaratory judgment action and courts have exercised that discretion where a plaintiff seeks a declaratory judgment that substantially overlaps it substantive claims") (internal citations omitted); Monster Daddy LLC v. Monster Cable Prods., Inc., No. 10-1170, 2010 WL 4853661, at *6 (D.S.C. Nov. 23, 2011) (dismissing three declaratory relief counterclaims because they "raise the same legal issues that are already before the court").

Count IV of Kennedy's amended complaint will be dismissed without prejudice.

### IV. CONCLUSION

Based on the foregoing, the court **GRANTS** defendant's motion to dismiss; **DISMISSES** all counts of the second amended complaint **WITHOUT PREJUDICE**; and **GRANTS** defendant's motion to strike. Plaintiff shall have leave to re-file a third amended complaint within 20 days of the filing of this order, or else the clerk will be directed to close this case.

---

"other" property damage unless that damage was caused by a sudden, calamitous, or dangerous occurrence.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**August 15, 2013**
**Charleston, South Carolina**